IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HELEN SMITH-TYLER,

   Plaintiff,

    v.

BANK OF AMERICA, N.A., et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:12-CV-1347-TWT

**OPINION AND ORDER**

This is an action for fraud and wrongful foreclosure. It is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 64] and the Defendant's Motion for Summary Judgment [Doc. 65]. For the reasons set forth below, the Plaintiff's Motion for Summary Judgment [Doc. 64] is DENIED and the Defendant's Motion for Summary Judgment [Doc. 65] is GRANTED.

**I. Background**

In June of 1997, the Plaintiff bought a home in Lithonia, Georgia (the "Property"). (Def.'s Statement of Facts ¶ 1.) On July 23, 2004, she obtained a loan from the Taylor, Bean & Whitaker Mortgage Corporation ("TBW"). (Pl.'s Statement of Facts ¶ 1.) The Plaintiff pledged the Property as collateral by executing a security deed ("2004 deed") to Mortgage Electronic Registration Systems, Inc. (MERS),

TBW's nominee. (Def.'s Statement of Facts ¶ 3.) The 2004 deed was recorded in the DeKalb County property records. (Def.'s Statement of Facts ¶ 4.) On July 27, 2009, the Plaintiff refinanced the TBW loan with Platinum Community Bank. (Pl.'s Statement of Facts ¶ 3.) As part of the transaction, the Plaintiff executed a security deed ("2009 deed") to MERS, the nominee of Platinum. (Pl.'s Statement of Facts ¶ 8.) The 2009 deed was also recorded in the DeKalb County property records. (Def.'s Statement of Facts ¶ 9.)

On August 4, 2009, the U.S. Department of Housing and Urban Development (HUD), the Federal Home Loan Mortgage Corporation (Freddie Mac), and the Government National Mortgage Association (Ginnie Mae) shut down TBW. (Def.'s Statement of Facts ¶ 11.) TBW's loans were transferred to other entities. (Def.'s Statement of Facts ¶ 12.) Ginnie Mae requested that the Defendant assume servicing of roughly 180,000 of these loans, which included the Plaintiff's 2004 loan from TBW. (Def.'s Statement of Facts ¶¶ 13-14.) At the time, TBW's records listed the Plaintiff's 2004 loan as active. (Def.'s Statement of Facts ¶ 15.)

The Defendant notified the Plaintiff that it was the new servicer of her loan. (Pl.'s Statement of Facts ¶ 5.) However, the Plaintiff was then contacted by another entity, RoundPoint Mortgage, LLC, which was also claiming to be the servicer of her loan. (Pl.'s Statement of Facts ¶ 6.) The Plaintiff then had a conference call with

representatives of both the Defendant and RoundPoint, and she was told to make payments to the Defendant. (Pl.'s Statement of Facts ¶ 8.)

Operating under the belief that it was servicing an active loan, the Defendant began foreclosure proceedings once the Plaintiff fell behind on her payments. (Def.'s Statement of Facts ¶ 22.) The Defendant hired McCalla Raymer to handle the foreclosure. (Def.'s Statement of Facts ¶ 22.) McCalla Raymer sent the Plaintiff a notice of foreclosure sale dated March 2, 2010. (Pl.'s Statement of Facts ¶ 13.) On April 5, 2010, the Plaintiff filed for bankruptcy. (Pl.'s Statement of Facts ¶ 14.) At the time, the Plaintiff had around $182,141.00 of unsecured debt in addition to any secured debt. (Def.'s Statement of Facts ¶ 27.)

The Defendant filed two proof of claims in the Plaintiff's bankruptcy proceeding. (Pl.'s Statement of Facts ¶ 18.) Because the Defendant maintained that it was servicing an active loan, the Plaintiff continued to make post-petition payments to the Defendant. (Pl.'s Statement of Facts ¶¶ 20-21.) During the bankruptcy proceeding, however, it was discovered that the 2004 loan had been paid off through the 2009 refinancing with Platinum. (Def.'s Statement of Facts ¶ 36.) The Defendant then entered into a consent agreement where it returned the money it received from the Plaintiff, with interest. (Pl.'s Statement of Facts ¶ 26; Def.'s Statement of Facts ¶ 38.) In this action, the Plaintiff asserts claims for wrongful foreclosure, intentional

infliction of emotional distress, fraud, and negligence. Both the Plaintiff and the Defendant have moved for summary judgment on all claims.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir.1990).

## III. Discussion

### A. Wrongful Foreclosure

The Plaintiff's claim for wrongful foreclosure must fail because there was no actual foreclosure. See Roper v. Parcel of Land, 1:09-CV-0312-RWS, 2010 WL 1691836, at *2 (N.D. Ga. Apr. 23, 2010) ("Because Defendants did not proceed with the foreclosure after Plaintiff filed the present action, Plaintiff cannot prove a claim for wrongful foreclosure."); Aetna Fin. Co. v. Culpepper, 171 Ga. App. 315, 319 (1984) ("[S]ince Mrs. Culpepper filed bankruptcy proceedings, thereby preventing any sale of the property, she suffered no legal injury and proved no actual damages."). The Plaintiff then attempts to convert her claim into one of wrongful *attempted* foreclosure. In Georgia, "courts have recognized a cause of action for wrongful attempted foreclosure when a foreclosure action was commenced, but not completed, where plaintiffs have shown that a defendant 'knowingly published an untrue and derogatory statement concerning the plaintiffs' financial conditions and that damages were sustained as a direct result.'" Morgan v. Ocwen Loan Servicing, LLC, 795 F. Supp. 2d 1370, 1377 (N.D. Ga. 2011) (citing Sale City Peanut & Milling Co. v. Planters & Citizens Bank, 107 Ga.App. 463, 465 (1963)).

Here, the Plaintiff provides no evidence that the Defendant knew that the loan had been satisfied when it initiated foreclosure proceedings. Consequently, there is no evidence that the Defendant knew that any published foreclosure notice contained

incorrect statements. The Plaintiff does not refute the Defendant's evidence that TBW's records marked the Plaintiff's 2004 loan as active. (Def.'s Mot. to Dismiss, Ex. J.) In response, the Plaintiff first argues that she put the Defendant on notice that there was another entity claiming to be the rightful servicer. (Pl.'s Resp. to Def.'s Mot. for Summ. J., at 8.) But this does not mean the Defendant knew that the 2004 loan had been satisfied. In fact, the Plaintiff and the Defendant had a conference call with RoundPoint where the parties appeared to believe that the Defendant was the servicer of an active loan. The Plaintiff then argues that the Defendant "knew or should have known that it was highly plausible that they were not the rightful servicer." (Pl.'s Resp. to Def.'s Mot. for Summ. J., at 8-9.) The Plaintiff, however, has to show actual knowledge. See Aetna Fin. Co., 171 Ga. App. at 319 ("Those decisions upon which Mrs. Culpepper relies to support her contention that she could recover damages for a wrongful attempted foreclosure require a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition."). The Defendant's summary judgment motion should be granted as to the Plaintiff's wrongful foreclosure and wrongful attempted foreclosure claims.

**B. Intentional Infliction of Emotional Distress**

Under Georgia law, a claim of intentional infliction of emotional distress contains the following elements: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; and (4) The emotional distress must be severe." United Parcel Service v. Moore, 238 Ga. App. 376, 377 (1999). In order to be sufficiently extreme and outrageous, the conduct must "go beyond all reasonable bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community." Id. Actionable conduct generally does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other vicissitudes of daily living." Id. Whether reasonable persons could find that the conduct reaches this level is a question of law for the court. See id.; Racette v. Bank of America, N.A., 318 Ga. App. 171, 179 (2012) ("Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law.").

First, the Plaintiff has no evidence that the Defendant intended to inflict emotional distress, or that it was reckless as to the possibility. As explained earlier, the Defendant had reason to believe it was collecting on an active loan. Consequently, the Plaintiff's claim fails as a matter of law. See Roddy v. Tanner Med. Ctr., Inc., 262 Ga. App. 202, 205 (2003) ("[T]he tort of 'intentional infliction of emotional distress,'

as its name implies, is reserved in Georgia for instances in which a defendant intended to harm the plaintiff, or for those rare occasions in which the evidence shows such a reckless disregard of the rights of others as to be equivalent to an intentional tort.").

Second, the Defendant's conduct was not extreme and outrageous. Although it collected on a debt that had been satisfied, "[s]harp or sloppy business practices . . . are not generally considered as going beyond all reasonable bounds of decency as to be utterly intolerable in a civilized community." United Parcel Service, 238 Ga. App. at 377. In fact, far more egregious conduct has failed to satisfy the "extreme and outrageous" requirement. See Cook v. Covington Credit of Georgia, Inc., 290 Ga. App. 825, 828 (2008) ("[T]hreatening language in the context of collecting a debt does not go beyond all bounds of decency and cannot be regarded as utterly intolerable in a civilized community."). The Defendant's summary judgment request as to the Plaintiff's intentional infliction of emotional distress claim should be granted.

### C. Fraudulent Misrepresentation

The Plaintiff claims that the Defendant fraudulently misrepresented to her that it was the servicer of an unsatisfied loan for which she was obligated. "Under Georgia law . . . the tort of fraud consists of five elements: (1) false representation by defendant; (2) scienter; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff." Next Century

Commc'ns Corp. v. Ellis, 318 F.3d 1023, 1027 (11th Cir. 2003) (internal quotation marks omitted).

Here, the Plaintiff's claim fails. First, she cannot establish the scienter element. "Scienter for fraud purposes may be shown by a . . . reckless representation." Avery v. Chrysler Motors Corp., 214 Ga. App. 602, 604 (1994). When attempting to satisfy the scienter requirement through a showing of recklessness, however, the Plaintiff must also show that the Defendant had an intent to deceive. See Smiley v. S & J Investments, Inc., 260 Ga. App. 493, 501 (2003) ("Hall and S & J had to know that the representations were false when made or that the representation was recklessly made with the intent to deceive for liability in fraud to attach."); O.C.G.A. § 51-6-2 ("A fraudulent or reckless representation of facts as true when they are not, if intended to deceive, is equivalent to a knowledge of their falsehood even if the party making the representation does not know that such facts are false."). As noted in the wrongful foreclosure discussion, the Plaintiff has no evidence that the Defendant knew that the 2004 loan had been satisfied. Additionally, the Defendant was not reckless in representing that it was servicing an active loan. The TBW records showed that it was active. (Def.'s Mot. to Dismiss, Ex. J.) In response, the Plaintiff first reiterates her argument that she put the Defendant on notice that RoundPoint was claiming to be the servicer of her loan. (Pl.'s Mot. for Summ. J., at 3.) But then they had a conference

call and all parties concluded that the Defendant was the true servicer. If anything, this shows that the Defendant was *not* reckless. The Plaintiff then argues that a Title Search Report requested by the Defendant revealed the 2009 deed. (Pl.'s Mot. for Summ. J., at 3.) The Defendant points out – correctly – that even if it was aware of the 2009 deed, that does not mean the Defendant knew that the 2004 loan had been satisfied. (Def.'s Reply in Supp. of its Mot. for Summ. J., at 5.) Even more, the Plaintiff herself states that the cancellation of the 2004 deed was recorded in the Superior Court of DeKalb County on December 1, 2010, months after the foreclosure commenced.[1] (Pl.'s Statement of Facts ¶ 9.)

Second, there is no justifiable reliance. "In order for a genuine issue of material fact to exist as to justifiable reliance, there must be some evidence that [the Plaintiff] exercised [her] duty of due diligence to ascertain the truth of the matter and to avoid damage." Wender & Roberts, Inc. v. Wender, 238 Ga. App. 355, 360 (1999). "Fraud cannot be the basis of an action if it appears that the party alleging the fraud had equal and ample opportunity to prevent it." Martin v. Centre Pointe Investments, Inc., 310 Ga. App. 253, 257 (2011) (internal quotation marks omitted). "A party may fail to exercise due diligence as a matter of law." Wender, 238 Ga. App. at 360. The Plaintiff

---

[1] Additionally, the Plaintiff admits that the Defendant did not intend to deceive her. (Smith-Tyler Dep., at 111-12.) ("Q: Do you believe that Bank of America intended to deceive you? A: No.")

could have uncovered that the Defendant was collecting on a satisfied debt. Unlike the Defendant, the Plaintiff knew that she had refinanced her 2004 loan. She does not argue that there was an information asymmetry that prevented her from discovering the truth. Third, there are no damages. All of the money paid to the Defendant as a result of its representation was returned with interest. (Def.'s Statement of Facts ¶ 39.) The Defendant's summary judgment request as to the Plaintiff's fraudulent misrepresentation claim should be granted.[2]

### D. Negligence

The Plaintiff argues that the Defendant was negligent in collecting on a satisfied debt. In Georgia, "[a] cause of action for negligence requires (1) [a] legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty." Dupree v. Keller Indus., Inc., 199 Ga. App. 138, 141 (1991) (internal quotation marks omitted).

---

[2] The Plaintiff also alludes to a negligent misrepresentation claim. The conclusion regarding justifiable reliance applies to that claim as well. See Real Estate Int'l, Inc. v. Buggay, 220 Ga. App. 449, 451 (1996) ("As the same principles apply to both fraud and negligent misrepresentation . . . justifiable reliance is also an essential element of a claim asserting negligent misrepresentation.").

This claim fails. To begin, the Plaintiff has not established a legal duty that was breached by the act of collecting on a satisfied debt. There is no confidential relationship giving rise to a duty between a lender and a borrower. See Baker v. Campbell, 255 Ga. App. 523, 528 (2002) ("The Bank as lender and the Bakers as borrowers had no fiduciary relationship and dealt at arm's length."); Pardue v. Bankers First Fed. Sav. & Loan Ass'n, 175 Ga. App. 814 (1985) ("There is . . . no confidential relationship between lender and borrower or mortgagee and mortgagor for they are creditor and debtor with clearly opposite interests."); Moore v. Bank of Fitzgerald, 225 Ga. App. 122, 126 (1997) ("[T]he mere fact that one reposes trust and confidence in another does not create a confidential relationship. In the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone.").

The Plaintiff argues, citing S & A Indus., Inc. v. Bank Atlanta, 247 Ga. App. 377, 382 (2000), that "[w]here one undertakes an act which he has no duty to perform and another *reasonably relies upon that undertaking*, the act must generally be performed with ordinary and reasonable care." (Pl.'s Reply in Supp. of Mot. for Summ. J., at 9) (emphasis added). As noted in the fraudulent misrepresentation

discussion, the Plaintiff's reliance on the Defendant's statements was not reasonable.[3] Cf. Pardue, 175 Ga. App. at 814 ("[E]ven if the bank had undertaken to advise appellants on their taxability and had mislead appellants, they would not be entitled to rely on any such representations but would be 'under a duty to prosecute their own inquiries' concerning their tax liability."). To be sure, this Court has previously found that there is no duty to non-negligently service a loan. See Kynes v. PNC Mortg., No. 1:12-CV-4477-TWT, 2013 WL 4718294, at *11-12 (N.D. Ga. Aug. 30, 2013) (negligence claim was dismissed because the plaintiff did not establish an independent duty to not negligently service a loan.); Kin Chun Chung v. JPMorgan Chase Bank, N.A., 1:11-CV-2131-TWT, 2013 WL 5354211, at *7 (N.D. Ga. Sept. 24, 2013) (no independent duty to non-negligently service a loan). Even Georgia courts suggest that such a duty does not exist. See Fielbon Dev. Co., LLC v. Colony Bank of Houston Cnty., 290 Ga. App. 847, 856 (2008) ("While evidence existed that the bank may have been negligent in managing and monitoring the loan . . . Fielbon failed to establish that the bank owed the company any duty independent of [the] contract in connection with the loan.").

---

[3] In addition, the Plaintiff's claim is not that the Defendant undertook an act and then negligently performed it. The Plaintiff's claim is that the Defendant was negligent because it undertook the act in the first place. Once more, the Plaintiff has not established a predicate duty that the Defendant breached by servicing a satisfied loan.

Finally, the Plaintiff has not produced sufficient evidence to show damages. As noted, the Defendant returned the money it was paid along with interest. (Def.'s Statement of Facts ¶ 39.) The Plaintiff argues that the alleged negligence also forced her to file for bankruptcy, thus causing economic harm. There is no evidence to show proximate causation. She admits that she was having financial issues independent of any mortgage obligations. (Pl.'s Resp. to Def.'s Statement of Facts ¶ 30.) The mere possibility of causation is insufficient to create a genuine issue of fact. See Barrett Properties, LLC v. Roberts Capitol, Inc., 316 Ga. App. 507, 509 (2012) ("A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant."). The Defendant's summary judgment motion should be granted as to the Plaintiff's negligence claim.

## IV. Conclusion

For these reasons, the Court DENIES the Plaintiff's Motion for Summary Judgment [Doc. 64] and GRANTS the Defendant's Motion for Summary Judgment [Doc. 65].

SO ORDERED, this 16 day of January, 2014.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge